NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BORIS IOSELEV, | : |
| | : Civil Case No. 09-6039 (FSH) (PS) |
| Plaintiff, | : |
| | : **OPINION** |
| v. | : |
| | : Date: May 4, 2010 |
| IRINA SCHILLING | : |
| ARKADY LYUBLINKSY, | : |
| | : |
| Defendants. | : |

**HOCHBERG, District Judge**:

**I.     INTRODUCTION**

Plaintiff brings this lawsuit to enforce an alleged oral promise by defendants to grant plaintiff a life estate in certain property in exchange for his services and for defendants' alleged theft of his personal property. Both plaintiff and defendants are appearing *pro se*. Plaintiff Boris Ioselev is a resident of New Jersey. Defendants Irina Schilling and Arkady Lyublinsky reside in Florida. Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**II.    THE ALLEGATIONS OF THE COMPLAINT**

The following is a summary of the allegations in the Complaint, which the Court must accept as true for the purposes of this motion.[1]

---

[1]  Defendants have raised several factual challenges to the Complaint in support of their motion, which may not be – and have not been – considered by the Court for the purposes of this motion to dismiss. *Pro se* parties should consult case law under Federal Rule of Civil Procedure 12(b)(6) to understand this distinction. Factual challenges are first considered at the summary judgment stage of the case, pursuant to Federal Rule of Civil Procedure 56, after discovery is concluded.

Plaintiff is the stepfather of defendant Irina Schilling and step-grandfather to defendant Arkady Lyublinsky, Ms. Schilling's son.  On or about January 14, 2002, during a conversation over dinner celebrating the old Russian New Year, Ms. Schilling allegedly offered plaintiff and his wife (Ms. Schilling's mother) a life estate in a house in Florida in exchange for plaintiff's assistance in developing real estate in Florida for investment purposes on Ms. Schilling's behalf.  Ms. Schilling allegedly indicated during this conversation that plaintiff would only be responsible for paying the taxes and utilities on the house.  Plaintiff allegedly accepted her offer.  It is not alleged that the oral agreement was ever reduced to writing.[2]  The contract was formed in New Jersey, where all the parties resided at the time.

Plaintiff alleges that over the following two years he traveled to Florida and purchased several parcels of real estate in Ms. Schilling's name.  He also returned to Florida several times to oversee the development of the parcels and made numerous telephone calls to contractors in Florida from his residence in New Jersey.  Plaintiff alleges that he performed several repairs and improvements to Ms. Schillings properties in Florida personally.

In May 2003, title to the properties was transferred from Ms. Schilling to her son, Mr. Lyublinsky.  Mr. Lyublinsky allegedly assured plaintiff that he would honor Ms. Schilling's oral promise of a life estate in exchange for plaintiff's services.

Sometime in 2004, Plaintiff moved into the house in Florida that defendants had allegedly promised him, and he remained there until 2008.  Plaintiff alleges that he rendered certain services to defendants relating to their real estate investments during this period.

---

[2]     Plaintiff concedes in his brief that the alleged contract was in fact oral.

2

Plaintiff's wife passed away in December 2008. Subsequently, Mr. Lyublinsky allegedly demanded that plaintiff pay the full amount due on the mortgage to his house if plaintiff wished to continue living there. Plaintiff could not afford the mortgage and was forced to leave the house. He returned to New Jersey.

While plaintiff was in New Jersey preparing for the move, defendants allegedly entered his house in Florida without authorization and removed several items of plaintiff's personal property, including a mink coat, jewelry, and other valuables. The total value of the allegedly stolen personal property is approximately $14,000.

Plaintiff seeks, among other remedies, damages for breach of contract, specific performance, and a declaration of the parties' rights under the alleged contract.

### III.  PROCEDURAL HISTORY

Defendants moved to dismiss the complaint on January 14, 2010, arguing that the alleged contract is unenforceable pursuant to the statute of frauds and void for lack of consideration.[3] Plaintiff moved on February 1, 2010 to strike the motion to dismiss and to be awarded a default judgment. The Court denied plaintiff's motion on February 18, 2010 and set a return date of April 5, 2010 for the motion to dismiss. On April 8, 2010, the Court ordered the parties to submit supplemental memoranda of law addressing 1) whether the law of New Jersey or Florida governs the alleged contract and 2) if Florida law governs, whether Florida's statute of frauds renders the alleged contract unenforceable. Plaintiff and defendants submitted their responses on April 22 and 26, 2010, respectively.

---

[3] The latter ground is factual in nature and not properly raised on a motion to dismiss. Accordingly, the Court will address only the Statute of Frauds defense in this opinion.

IV.     **STANDARD OF REVIEW**

The standard governing a motion to dismiss is well known. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted). A complaint filed by a *pro se* plaintiff is held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In evaluating a motion to dismiss, the Court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if plaintiff's claims are based on those documents. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1992).

V.      **DISCUSSION**

The defense of the statute of frauds may be raised by motion to dismiss when the facts supporting it appear on the face of the complaint. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).

A.  **Choice of Law**

It is necessary to determine whether the statute of frauds of New Jersey or Florida applies to the alleged contract. When sitting in diversity, this Court "must apply the law of the forum state, including its choice of law rules." *Barbey v. Unisys Corp.*, 256 F. App'x 532, 533 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). In New Jersey, "the place of contract governs the choice of law unless another jurisdiction has a more significant relationship with the parties and/or transaction." *Walsh v. Mattera*, 879 A.2d 1226, 1230 (N.J. Super. Ct. App. Div. 2005) (citing *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 417 A.2d 488 (N.J. 1980)). Thus, New Jersey law will apply unless Florida has a more significant relationship to the dispute. To determine if another state has a more significant relationship, New Jersey employs "a flexible 'governmental-interest' analysis to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation." *Id.*

"The initial prong of the governmental-interest analysis entails an inquiry into whether there is an actual conflict between the laws of the respective states." *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996). There is an actual conflict here. In New Jersey, a contract to transfer an interest in real estate is unenforceable unless it is in writing <u>or</u> proved by clear and convincing evidence. *See* N.J. Stat. Ann. § 25:1-13. The New Jersey statute also contains no provision invalidating oral contracts that are not to be performed within one year. By contrast, in Florida, "[n]o action shall be brought ... upon any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them, or for any lease thereof for a period longer than 1 year, or upon any agreement that is not to be performed within the space of

1 year from the making thereof ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized." Fla. Stat. § 725.01. Florida's statute contains no exception permitting oral contracts that are proved by clear and convincing evidence.

"The second prong of the governmental-interest analysis seeks to determine the interest that each state has in resolving the specific issue in dispute. That analysis requires the court to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Gantes*, 679 A.2d at 109. The policies underlying statutes of frauds are "to guard against the perils of perjury and error in the spoken word and to protect *defendants* against unfounded and fraudulent claims." *Deevy v. Porter*, 95 A.2d 596, 596-97 (N.J. 1953) (emphasis added); *accord Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So. 2d 777, 779 (Fla. 1966) ("The statute of frauds grew out of a purpose to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos."). Both states have connections with the dispute and the litigants: plaintiff is a resident of New Jersey; the alleged contract was formed in New Jersey; defendants are residents of Florida; the alleged contract was to be performed in Florida; and the subject property is located in Florida.

Based on the foregoing factors, Florida has a more significant relationship to this dispute than New Jersey. The decisive factors in this analysis are the policies underlying the statutes of frauds and the fact that the subject property is located in Florida. Since statutes of frauds are intended to protect <u>defendants</u> from perjury or error in the spoken word, New Jersey

does not have an interest in applying its law to defendants Schilling and Lyublinsky, who are residents of Florida.[4] Florida, on the other hand, has a strong interest in protecting defendants, who reside there. Florida also has the paramount interest in deciding the ownership of property located within its borders. *Cf. Bus. Loan Ctr., Inc. v. Nischal*, 331 F. Supp. 2d 301, 310 (D.N.J. 2004) (recognizing that New Jersey applies the law of the state where real property is located to determine title). Since Florida has a more significant relationship to the alleged contract than New Jersey, its law governs.

  B. **The Statute of Frauds**

    The Florida Supreme Court has explained that the statute of frauds "should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection." *Yates v. Ball*, 181 So. 341, 344 (Fla. 1938). Nevertheless, Florida recognizes certain limited exceptions to the statute of frauds. For instance, part performance of an oral contract for the conveyance of an interest in real estate can support a suit in equity.[5] *See Elsberry v. Sexton*, 54 So. 592, 593

---

[4] Although defendants were residents of New Jersey at the time the alleged contract was formed, they moved to Florida in 2005 to occupy one of the properties that plaintiff claims to have assisted in developing. Defendants have lived in Florida ever since.

[5] Plaintiff also argues that the alleged oral contract is enforceable at law because there has been full or part performance. *See W.B.D., Inc. v. Howard Johnson Co.*, 382 So. 2d 1323, 1327 (Fla. Dist. Ct. App. 1980) ("It is well established that the statute of frauds may not be utilized as a defense to a verbal contract that has been fully performed on the part of the person claiming the benefit thereof."); *but see Collier v. Brooks*, 632 So. 2d 149, 156-57 (Fla. Dist. Ct. App. 1994) (refusing to recognize part performance exception to statute of frauds in oral real estate contract).

(Fla. 1911) ("Where a contract is for the sale of lands, or any interest therein, and is not in writing, no action at law can ever be maintained upon it. Part performance of such a contract is a ground of relief in equity only, and there on the principle of relieving from fraud."); *see also Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991). Plaintiff has requested equitable relief, such as specific performance of the alleged contract. Thus, before discovery commences to determine, *inter alia*, whether plaintiff can prove that the oral contract exists and is enforceable based upon part performance or some other doctrine, it cannot be found that the Complaint fails to state a plausible claim for relief.

Florida's prohibition against oral contracts that are not to be performed within one year cannot support dismissal on the pleadings. *See Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1177-78 (M.D. Fla. 2005) ("[T]he primary factor to be utilized in determining whether or not an oral contract is to be performed within the one year limitation of the statute is, of course, the intent of the parties. The intent of the parties is a factual matter that cannot be resolved on a motion to dismiss.") (internal quotations omitted). This argument is properly raised at a later stage of the case.

    **C.**    **Subject Matter Jurisdiction**

Defendants argue that the Court lacks subject matter jurisdiction on the grounds that plaintiff has failed to allege sufficiently that a valid contract existed and *a fortiori* has failed to allege the jurisdictional $75,000 amount in controversy. This argument goes to the merits of the case, namely whether a valid contract exists; it is not a basis for dismissal on the pleadings. The amount in controversy is measured by the value of plaintiff's claim to the real estate at issue,

which is alleged to exceed $75,000.  It is irrelevant whether his claim to the real estate is meritorious.

**VI.     CONCLUSION**

For the reasons set forth in this opinion, defendants' motion to dismiss is denied. An appropriate order will issue.

   /s/  **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.