NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BORIS IOSELEV, | : Civil Case No. 09-6039 (FSH) (PS) |
| Plaintiff, | : **OPINION & ORDER** |
| v. | : Date: September 14, 2010 |
| IRINA SCHILLING<br>ARKADY LYUBLINKSY, | : |
| Defendants. | : |

**HOCHBERG, District Judge**:

**I.     INTRODUCTION**

Plaintiff brings this lawsuit alleging that defendants breached an oral agreement, express or implied, to grant him a life estate in a house in Palm Coast, Florida. In their answer, defendants Irena Schilling and Arkady Lyublinsky assert a counterclaim and several purported affirmative defenses. Plaintiff now moves to dismiss defendants' counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike their affirmative defenses pursuant to Rule 12(f).

**II.    THE ALLEGATIONS OF THE COUNTERCLAIM**

The Court assumes the reader's familiarity with the allegations in the complaint. In short, plaintiff alleges that, at a party at plaintiff's home in New Jersey, his stepdaughter promised him a life estate in a yet-to-be-constructed house in Florida in exchange for his services on her behalf in investing in Florida real estate. Plaintiff allegedly performed his end of the contract and occupied the home, as promised, at 53 Port Royal in Palm Coast, Florida. However,

he claims he was forced by Mr. Lyublinsky (Ms. Schilling's son) to leave the house after the death of plaintiff's wife (Ms. Schilling's mother).  Plaintiff also claims that defendants broke into his house and removed certain personal property, which he reported to the police.

In their answer and counterclaim, defendants recite a different version of events.  They allege that plaintiff's friend, Gennady Kissilev, having moved to Florida in 2001, began "badgering" Ms. Schilling to invest in Florida real estate, but she repeatedly declined.  Plaintiff allegedly visited Palm Coast, Florida in 2002 and, during the visit, made several telephone calls to Ms. Schilling insisting that she invest in real estate there and assuring her that he would assist her in the due diligence on the properties.

They allege that Ms. Schilling signed a contract with a builder in October 2002 to construct a house on 119 Boulder Rock Drive in Palm Coast, Florida.  Plaintiff then allegedly began to cajole her to construct houses on her other properties in Florida (it appears from this allegation that Ms. Schilling owned other properties).  When she responded that she did not have the resources to develop the properties, plaintiff allegedly suggested that she transfer the parcels to her son, Mr. Lyublinsky, who would be able to develop them.  They claim that, after some time, plaintiff became impatient and harassed Ms. Schilling until, in January 2003, she agreed to transfer the parcels to Mr. Lyublinsky.

Defendants allege that plaintiff then directed his efforts toward persuading Mr. Lyublinsky to construct a house on 144 London Drive in Palm Coast, Florida.  Mr. Lyublinsky claims that he was a busy professional living in New Jersey at that time, and he did not have time to become involved in developing real estate in Florida.[1]  Plaintiff allegedly offered to sign the

---

[1]   Mr. Lyublinsky now resides in Palm Coast, Florida.

2

paperwork on his behalf using a power of attorney; Mr. Lyublinsky agreed.  In the deal, Mr. Kissilev, plaintiff's friend, allegedly received a 4% commission on the price of the house and paid plaintiff an unspecified referral fee.  (The exact details of the alleged transaction are unclear from the pleading.)

Defendants contend that, in 2004, using the power of attorney that was executed solely for the property at 144 London Drive, plaintiff engaged a contractor to build a house at 53 Port Royal, which is also in Palm Coast, Florida, without defendants' consent.  (This is the parcel that plaintiff alleges was promised to him as a life estate.)  Mr. Lyublinsky claims that he was forced to obtain a mortgage of $161,000 to cover the construction.  Again, Mr. Kissilev allegedly received a 4% commission, and plaintiff was paid an unspecified referral fee.

Defendants further contend that plaintiff decided to move to Florida in 2005 and asked to rent the house on 53 Port Royal.  He allegedly assured Mr. Lyublinsky that he would pay $1200 per month in rent, which would have been sufficient to cover most of Mr. Lyublinsky's monthly expenses related to the property.  However, defendants claim that after plaintiff moved in, he informed Mr. Lyublinsky that he could only pay $750 per month in rent, with the result that Mr. Lyublinsky was forced to cover the balance in monthly expenses – approximately $500.

Plaintiff's wife passed away in 2008.  Thereafter, relations between the parties soured.  In March 2009, plaintiff allegedly ceased paying rent, and Mr. Lyublinsky lost his job.  Consequently, Mr. Lyublinsky claims that he informed plaintiff that he needed rental income to afford the mortgage on 53 Port Royal and to avoid foreclosure.  Plaintiff allegedly responded that he wanted a life estate in the house.  Mr. Lyublinsky claims that he counter-offered to sell him the house for the amount outstanding on the mortgage, at which point plaintiff became angry and

threatened to accuse defendants of burglary if Mr. Lyublinsky refused to comply with his demand. Defendants allege that plaintiff carried through with his threat that same month. He called the Flagler County Sheriff's Department to report a burglary. However, the Sheriff's Department allegedly found no evidence of a break-in and closed the case.

Defendants allege that plaintiff moved out of the house at 53 Port Royal in May 2009. He filed suit in December 2009.

## III.   PROCEDURAL HISTORY

Plaintiff commenced this lawsuit on November 30, 2009. In lieu of a responsive pleading, defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court denied that motion in an Opinion dated May 6, 2010. Pursuant to the Scheduling Order entered by the Magistrate Judge, plaintiff amended the complaint on June 17, 2010. Defendants filed an answer to the amended complaint on June 29, 2010. The answer, which was defendants' first responsive pleading, asserted one counterclaim and eight affirmative defenses. On July 6, 2010, plaintiff moved to dismiss the counterclaim and to strike the affirmative defenses.

## IV.   STANDARD OF REVIEW

The standard governing a motion to dismiss a counterclaim is the same as the well known standard governing motions to dismiss generally. "To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken

4

as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted). When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the [pleading's] well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the [pleading] are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a [pleading] suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

The same standard governs the motion to strike the affirmative defenses under Rule 12(f). *See In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 641, 647-48 (D.N.J. 2009) ("Because a motion [to strike] challenges the legal sufficiency of the pleading, it is governed by the same standards as a motion to dismiss[.] ... An affirmative defense is insufficient as a matter of law if it cannot succeed under any circumstances.").

Pleadings filed by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

V.     DISCUSSION

### A. Motion to Dismiss The Counterclaim

Plaintiff moves to dismiss defendants' counterclaim for failure to state a claim upon which relief may be granted. Defendants have alleged that plaintiff was granted a power of attorney to act on Mr. Lyublinsky's behalf concerning the development of a parcel of land in Palm Coast, Florida. Under Florida law, one who acts on another's behalf through a power of attorney is a fiduciary.[2] *See Aviation Advisers Int'l, Inc. v. TransAmerica Inv. Grp., Inc.*, No. 8:09-cv-588-T-23TGW, 2010 WL 2643523, at *1 (M.D. Fla. June 30, 2010) ("An agent is a fiduciary with respect to any matter within the scope of the agency.") (citing *Fisher v. Grady*, 178 So. 852 (Fla. 1937)); Restatement (3d) of Agency § 8.01.

Defendants further allege that plaintiff abused the power of attorney in a self-dealing transaction to bind Mr. Lyublinsky to a contract to develop the property at 53 Port Royal for plaintiff's own benefit. Although defendants have entitled their claim for relief "Breach of judicial trust and promise," their allegations, accepted as true and construed liberally, state a claim for breach of fiduciary duty. Since this Court is obligated to apply the applicable law even if *pro se* defendants failed to mention it by name, plaintiff's motion to dismiss the counterclaim is denied.[3]

---

[2] It appears from the face of the pleading that Florida law governs defendants' counterclaim for the same reasons as set forth in the Court's May 6, 2010 Opinion.

[3] In addition to their cause of action regarding the house at 53 Port Royal, defendants seek relief relating to the burial of plaintiff's late wife (the mother and grandmother of defendants Schilling and Lyublinsky, respectively) and the return of certain of her personal effects, allegedly in accordance with her dying wish. These allegations are completely unrelated to plaintiff's lawsuit. Accordingly, the Court lacks supplemental jurisdiction to hear these claims pursuant to 28 U.S.C. § 1367(a). *See Lyon v. Whisman*, 45 F.3d 758, 759-60 (3d Cir. 1995). There is also no independent basis for federal jurisdiction. These claims must be dismissed without prejudice for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

B. **Motion to Strike**

*Pro se* defendants assert the following eight purported affirmative defenses: 1) plaintiff's claims are barred because of untrue statements of fact in the complaint; 2) failure to satisfy the prima facie elements; 3) payment; 4) ratification; 5) statute of frauds; 6) unclean hands; 7) improper venue; and 8) threats and extortion. Plaintiff moves to strike each affirmative defense pursuant to Federal Rule of Civil Procedure 12(f), which allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Striking an affirmative defense "is a drastic remedy, to be resorted to only when required for the purposes of justice." *In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 641, 648 (D.N.J. 2009); *see also Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986) ("[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent. The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where ... the factual background for a case is largely undeveloped.") (internal citations and quotations omitted); *cf. Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) ("[M]otions to strike are usually viewed with disfavor and will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.") (internal quotations omitted).

i. <u>Untrue Statements of Fact in the Complaint</u>

Not surprisingly, defendants allege that the complaint is rife with falsehoods. That is an issue that will undoubtedly be adjudicated in this case. Although it is better

7

characterized as a general denial than an affirmative defense, a motion to strike would in no way narrow the issues currently before the Court or conserve the resources of the parties or the Court.

        ii.        Failure to Satisfy the Prima Facie Elements

Defendants' purported affirmative defense of failure to satisfy the prima facie elements is better characterized as the defense of failure to state a claim upon which relief may be granted. The Court has already ruled in its May 6, 2010 Opinion that the original complaint states a claim. However, plaintiff has since amended the complaint to add additional counts. Defendants are entitled to argue in their dispositive motion or at trial that these additional counts fail to state a claim. *See* Fed. R. Civ. P. 12(h)(2). Accordingly, the motion to strike this defense is denied.

        iii.        Payment

Defendants allege that plaintiff has already received any compensation due him for services rendered. Although defendants also contend that plaintiff is entitled to no compensation, they are permitted, as here, to plead in the alternative. *See* Fed. R. Civ. P. 8(d). Plaintiff moves to strike this affirmative defense on the basis of his own affidavit, submitted in connection with the motion, averring that he has received no payment in satisfaction of his claims. That is a factual challenge that goes to the merits of his claim; it is not a basis to strike an affirmative defense on the pleadings under Rule 12(f).[4]

        iv.        Ratification

---

[4] In his brief, plaintiff construes this affirmative defense as accord and satisfaction, which he argues is not applicable to defendants' allegations. However, payment is listed as an independent affirmative defense under Rule 8(c)(1).

Defendants assert that plaintiff had full knowledge that no contract existed between them but undertook to perform certain services, purportedly on defendants' behalf, without authorization. This is not a textbook example of ratification.[5] However, under a liberal construction, defendants appear to allege that, whatever discussions had taken place previously, plaintiff later understood and ratified that his services, if any, were gratuitous and not part of a contract. Whether a contract existed between the parties is a fact issue not ripe for adjudication on a motion to strike.

      v.     Statute of Frauds

Defendants re-assert their statute of frauds defense, which they originally raised in their motion to dismiss. Plaintiff argues that the Court's May 6, 2010 Opinion denying the motion to dismiss disposed of the issue definitively. That is incorrect. The Court ruled that plaintiff's allegations, accepted as true and given the benefit of all reasonable inferences, were sufficient to state a claim for relief. Whether the statute of frauds precludes plaintiff's cause of action shall be decided on a full factual record, whether on summary judgment or at trial.

      vi.     Unclean Hands

Plaintiff's amended complaint alleges several equitable causes of action, such as unjust enrichment. Defendants allege in their answer and counterclaim that plaintiff abused a power of attorney, in a self-dealing transaction, to bind them to the development of the real estate at issue in plaintiff's complaint. Under the doctrine of unclean hands, a court sitting in equity

---

[5] In contracts cases, ratification typically gives rise to a legal obligation. It is the binding adoption of a prior act that, when performed, did not give rise to a legal obligation. *See* Black's Law Dictionary 1290 (8th ed. 2004). Defendants deny that there is any legal obligation here.

9

may refuse to "grant relief to one who is a wrongdoer with respect to the subject matter of the suit." *In re Gabapentin Patent Litig.*, 648 F. Supp. 2d at 649 (quotations omitted). Accepting defendants' allegations as true for the purposes of this motion, plaintiff's alleged misdeeds as defendants' fiduciary would likely preclude his recovery, if any, on equitable grounds.

       vii.    <u>Improper Venue</u>

Defendants object to venue in this district because 1) none of defendants resides in New Jersey, 2) the subject property is located in Florida, 3) the alleged performance of services took place primarily in Florida, and 4) the police report on the alleged burglary was filed in Florida. Plaintiff argues that the defense should be stricken because venue is not an affirmative defense and because defendants pleaded in their counterclaim that venue is proper in this district.

The Court finds plaintiff's arguments unavailing. However, the defense of improper venue is waived if a party fails to include it in a motion made under Rule 12(b). *See* Fed. R. Civ. P. 12(h)(1)(A). Defendants did not object to venue in their pre-answer motion to dismiss. Rather, defendants first raised it in their answer, which was filed after their motion to dismiss was denied. Accordingly, the defense of improper venue is waived and must be stricken.

Notwithstanding the foregoing, it is possible that New Jersey may have been either an improper venue or a less convenient venue than the Middle District of Florida. Mr. Lyublinsky and Ms. Schilling reside in Palm Coast and Tampa, respectively, which are both in that district. In addition, Palm Coast, Florida is the locus of such a large proportion of the events in question, as well as the subject property at 53 Port Royal. That is particularly significant in a case that may bear on the title to real property. Moreover, the Court has already recognized that

the substantive issues in this case will likely be governed by Florida law, with which a Florida court would have greater familiarity and expertise. Potential third-party witnesses also reside in the Middle District of Florida, including Gennady Kisselev, the Flagler County Sheriff's Department, and the builders with whom the parties allegedly contracted.[6] These factors would be weighed against the fact that plaintiff, albeit previously a resident of Florida, has returned to New Jersey and chosen this forum.

In light of the totality of the foregoing considerations, this case appears to represent an unfortunate consequence of the parties' *pro se* status, since they failed to bring the question of proper venue before the Court in a timely manner under the Federal Rules of Civil Procedure. Nevertheless, even where the defense of improper venue is waived, the Court retains the power to transfer the case pursuant to 28 U.S.C. § 1404(a) where the interests of justice dictate that the case should proceed to trial in a different forum. *See CoActiv Capital Partners, Inc. v. Feathers*, No. 08-5506, 2009 WL 1911673, at *2 (E.D. Pa. July 1, 2009). Accordingly, the Court invites the parties to state their position as to whether the case should be transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).[7] Each party shall file a brief not

---

[6] The Court is not aware at this juncture what witnesses will ultimately be called to testify at trial.

[7] This inquiry is guided by both private and public factors, as set forth in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995). The private factors include: (1) the plaintiff's choice of forum; (2) the defendant's forum preference; (3) where the claim arose; (4) the convenience of the witnesses; (5) the convenience of the parties; and (6) the location of books and records. *Id.* at 879. The public factors include: (7) the enforceability of any judgment; (8) any practical considerations making trial easy, expeditious, or inexpensive; (9) relative administrative difficulty resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the trial judge's familiarity with applicable state law. *Id.* at 879-80.

to exceed ten (10) pages in length on or before **Wednesday September 29, 2010**.  Each party may file a brief responding to its opponent's brief on or before **Friday October 8, 2010**.[8]

        viii.    Threats and Extortion

Defendants allege that plaintiff threatened to accuse them of larceny if they did not grant him a life estate in 53 Port Royal.  That could be characterized as the affirmative defense of duress.  Defendants do not expressly allege that they acquiesced under this alleged duress or, if so, how they acquiesced.  Nevertheless, it cannot be said that this affirmative defense would not succeed under any circumstances, nor would striking it narrow the issues before the Court.

**VI.   CONCLUSION**

For the reasons set forth in this opinion, plaintiff's motion to dismiss the counterclaim and to strike the affirmative defenses [docket # 31] is **GRANTED IN PART AND DENIED IN PART**.  Defendants' defense of improper venue is **STRICKEN** as waived.  Plaintiff's motion is otherwise **DENIED**.

Upon the Court's own motion, defendants' claims related to the burial of plaintiff's late wife and the return of her personal effects are **DISMISSED** without prejudice for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(h)(3).

The parties shall state their respective positions as to whether this case should be transferred to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a).  Each party shall file a brief not to exceed ten (10) pages in length on or before **Wednesday September 29, 2010**.

---

[8]    In light of the evident complexity of this and other legal and factual issues in this case, the Court encourages both sides to consider retaining counsel.

Each party may file a brief responding to its opponent's brief on or before **Friday October 8, 2010**.

        **IT IS SO ORDERED**.


                                                      /s/  **Faith S. Hochberg**
                                                    Hon. Faith S. Hochberg, U.S.D.J.